James Millin Larsen v. Commissioner.
Larsen v. Commissioner
Docket No. 25014.
United States Tax Court
1950 Tax Ct. Memo LEXIS 54; 9 T.C.M. (CCH) 1004; T.C.M. (RIA) 50268; November 3, 1950
*54 James Millin Larsen, pro se. Michael Waris, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined an income tax deficiency of $890.01 against petitioner for the calendar year 1946. The question presented is whether the respondent erred in his disallowance in full of various deductions claimed by petitioner on his return as representing expenses, taxes, charitable contributions and the like, and if so how much of each of the items does constitute a proper deduction. Findings of Fact The petitioner, an individual residing in Roslyn Heights, New York, filed his income tax return for the calendar year 1946 with the collector of internal revenue for the first district in New York. During the calendar year 1946 petitioner was employed as a pilot by the American Export Airlines. Until June 6, 1946, petitioner with several other pilots was assigned to a military operation of the airlines, which activity arose out of a contract between the United States Army and the airlines. Under its contract with the army the American Export Airlines was obligated to fly a given number of flights and operate a given number *55 of airplanes for the military. Coincidental with this operation the company was operating commercially. After June 6, 1946, the petitioner was assigned to the commercial activity. A considerable number of petitioner's flights during 1946 were overseas resulting in his being out of the country for about one-third of the year. For each day of duty out of the country while flying under the army contract the petitioner was reimbursed at the rate of $8 per day by the airlines to cover expenses. Sixty-seven days were spent out of the country incident to the army operation. No such per diem payment was available to petitioner for flights out of the country under the commercial operation. Instead the airlines made arrangements with several hotels abroad whereby the pilots merely signed for their meals and lodging. However, for reasons personal to themselves, petitioner and several of the other pilots elected to patronize restaurants where more and better food could be had. This was their personal expense, not borne by the airline company. Petitioner retained a so-called tax expert to prepare his income tax return for 1946. This man filled out about seventy or seventy-five per cent of the *56 returns of the flight personnel. Petitioner later discovered that he was a disbarred attorney. Of the several deductions listed the amounts in some instances were in fact the estimates of the consultant rather than estimates of the consultant rather than estimates of the petitioner. As prepared by the so-called expert petitioner's return showed an over-payment of $337.35 for which refund was claimed. This figure was the difference between $1,800.51 listed as previously withheld from wages and the tax of $1,463.16 as thus computed. The respondent in his determination of the deficiency disallowed in full the deductions which had been claimed by petitioner on his return. The following table shows the deductions claimed by petitioner on his return which were disallowed in full and the amounts with respect to each item as claimed by petitioner in his petition: Claimed in
Claimed in
Return
Petition
Church and charities
$ 250.00
$ 250.00
Interest on mortgage
450.00
215.81
Real estate taxes
343.80
142.00
Sales tax
68.40
68.40
123 days [away from home
at $12 per day less reim-
bursements of $8 per
day]
492.00
133 days [same as above]
532.00
Association dues
200.00
200.00
Flying equipment
160.00
160.00
Maintenance equipment
76.00
76.00
C.A.A. exams
20.00
20.00
Navigation equipment
100.00
100.00
Periodicals and books
18.00
18.00
Telephone expenses
72.00
72.00
Auto expenses
669.90
669.90
Totals
$2,920.10
$2,524.11
*57 Opinion In the main the disallowed deductions were bottomed on estimates rather than an exact knowledge or recollection of the amounts actually expended under the various headings. In some instances the figures represented an over-all amount suggested and put into the return by the so-called tax expert. As previously noted, the claimed deductions were disallowed in full by the respondent in determining the deficiency herein. At the hearing the petitioner offered convincing evidence that with respect to most of the items some expenditures were in fact made and it follows, the character of the expenditures being considered, he is entitled to the deduction of some amounts with respect thereto. This fact is now conceded by the respondent. The only question remaining is a determination of the amounts which petitioner has proven. Under the heading Church and Charities petitioner claims a deduction of $250. At the hearing petitioner admitted that this particular amount originated with the so-called tax expert. He produced proof that he made a $2 contribution to the Queensboro Tuberculosis and Health Association and a $3 contribution to the National Foundation for Infantile Paralysis. *58 In addition he testified that he gave $10 each to the Cub Scouts and the Girl Scouts, and with respect to those items we have no reason to doubt his testimony. He further testified that he contributed $3 per Sunday when he attended church. He could only estimate the number of Sundays on which he did attend church. His estimate was twenty-six Sundays. Applying the doctrine of , it is our conclusion that he attended church on eighteen Sundays and made contributions of $3 per Sunday. With respect to real estate taxes, the petitioner's proof limited his 1946 payments to $17.87. This amount is now conceded by the respondent. As sales taxes the petitioner claimed $68.40. The respondent concedes $37. These taxes consisted of the New York City sales tax of 2 per cent and a tax on gasoline which the respondent has figured at 4 cents per gallon. Of the $37 admitted by respondent $17 covered the sales tax on a piano which cost petitioner $850. Petitioner's testimony is that he furnished his home through the purchase of furniture. We think it reasonable that he expended at least as much for other furniture as he did for the piano and we so *59 hold. He estimated his gasoline consumption at 1,000 gallons. The respondent concedes 500 gallons. After consideration of the evidence, we have concluded that a fair and proper estimate would be 625 gallons and the tax thereon of 4 cents per gallon. With respect to his expenses in the course of his employment while out of the United States, the respondent makes no concession. It is our view that the petitioner has not justified the deduction of any amount. He admittedly received $8 per day for the sixty-seven days in which his flights were under the army contract. He has not reported this amount as gross income and it is our view that he has not shown that his deductible expenses while away from home on those flights would exceed $8 per day. With respect to the amounts claimed for expenses while on flights out of the United States other than the army flights, the record shows that meals and lodging were provided by his employer. The fact that the flyers, for reasons personal to themselves, elected to eat elsewhere stamps the expenditures as personal expenses, the deduction of which is specifically barred by the statute. Of the deduction claimed for association dues the respondent *60 now concedes $75. The evidence of record does not justify a greater amount. The respondent also concedes deductibility of $60 of the $160 claimed in respect of flying equipment. The $60 also is as much as the record justifies. For maintenance of equipment the petitioner claims a deduction of $76. The respondent concedes the deductibility of $21 of that amount. This item covered the expenses of uniform repair and their maintenance, including cleaning and pressing. The presence of gold braid on the uniforms was the occasion of some increase in the expenses of maintenance over that of plain uniforms. Considering the evidence as a whole, it is our view that $40 is reasonable for this item. The petitioner deducted and makes claim for $100 for navigation equipment, $18 for periodicals and books, $72 for telephone expenses and $669.90 for automobile expenses. So far as shown by the evidence the automobile expense was incurred for transportation between his place of abode and the airfield and constitutes a non-deductible personal expense. He is entitled, we think, to some allowance for depreciation on navigation equipment and for expendable items. He is also entitled to some allowance *61 for professional periodicals. We also believe that he had some telephone expenses, even though limited in amount, properly attributable to his work and for which he was not reimbursed. For these three items we have concluded, after consideration of the evidence, that $60 is a proper amount. Decision will be entered under Rule 50.